IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:16-CV-1-D

| | | |
|---|---|---|
| VALENCELL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| APPLE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

This case comes before the court on three motions: a motion for a protective order (D.E. 42) by plaintiff Valencell, Inc. ("Valencell"); a motion for a protective order (D.E. 69) by defendant Apple, Inc. ("Apple")[1]; and an emergency motion to compel and for expedited briefing (D.E. 66) by Valencell. The motions have been fully briefed[2] and referred to the undersigned for disposition pursuant to 28 U.S.C. § 636(b)(1)(A). For the reasons set forth below, both motions for protective order will be allowed in part and denied in part, and the motion to compel and for expedited briefing denied as moot.

## BACKGROUND

Valencell commenced this patent infringement action on 4 January 2016. Compl. (D.E. 1). In its second amended complaint, Valencell contends that Apple is knowingly using Valencell's patented heart sensor technology in Apple's Apple Watch product without obtaining proper licensing of the technology. 2d Am. Compl. (D.E. 53) ¶¶ 7, 8. Specifically, Valencell

---

[1] Apple withdrew (*see* D.E. 59) an earlier motion for a protective order (D.E. 50) it had filed.

[2] Valencell filed a memorandum (D.E. 43) with exhibits in support of its motion for a protective order and Apple an opposition memorandum (D.E. 52) with exhibits. Apple filed a memorandum (D.E. 70) with exhibits in support of its motion for a protective order, Valencell an opposition memorandum (D.E. 75) with exhibits, and, with leave of court (*see* D.E. 77), Apple a reply (D.E. 78) with exhibits. Valencell filed a memorandum (D.E. 66) in support of its motion to compel and for expedited briefing, and Apple an opposition memorandum (D.E. 71) with exhibits.

alleges that in March of 2013, Apple accessed Valencell's website and obtained Valencell's white papers contained therein by providing fictitious information. *Id.* ¶¶ 6, 7. In February of 2015, Valencell allegedly notified Apple that use of its technology in the Apple Watch without a license violated Valencell's patents. *Id.* ¶ 8.

Valencell asserts four claims for patent infringement (*id.* ¶¶ 1-36) and a claim for unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75.1-1 (*id.* ¶¶ 37-39) against Apple. In its answer, Apple denies the material allegations in Valencell's second amended complaint and asserts various affirmative defenses. Apple Ans. & Ctrclms. (D.E. 61) 1-8. Apple also asserts counterclaims seeking a declaration of invalidity of four of Valencell's patents. *Id.* at 9-17. Valencell filed an answer (D.E. 73) denying the material allegations of the counterclaims.

In connection with their Federal Rule of Civil Procedure 26(f) conference, the parties discussed and agreed on the need for a protective order to govern the exchange of confidential discovery material in this case. Nonetheless, the parties were unable to reach agreement on a joint proposed protective order despite extended conferral efforts. Accordingly, each party filed its own proposed protective order and a motion for its adoption. In addition, Valencell has moved for an order compelling Apple to respond to discovery requests prior to entry of any protective order and requiring expedited briefing on the motion.

## APPLICABLE LEGAL STANDARDS

The Federal Civil Rules enable parties to obtain information by serving requests for discovery on each other, including interrogatories, requests for production of documents, and notices of deposition. *See generally* Fed. R. Civ. P. 26-37. The rules of discovery, including Rule 26, are to be given broad and liberal construction. *Herbert v. Lando*, 441 U.S. 153, 177

2

(1979); *Nemecek v. Bd. of Governors*, No. 2:98-CV-62-BO, 2000 WL 33672978, at *4 (E.D.N.C. 27 Sep. 2000).

The court is also authorized to impose appropriate limitations on discovery. Rule 26 provides that the "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). A party moving for a protective order has the burden of making a particularized showing of why discovery should be denied, and conclusory or generalized statements in the motion fail to meet this burden. *Smith v. United Salt Co.*, No. 1:08CV00053, 2009 WL 2929343, at *5 (W.D. Va. 9 Sept. 2009).

The entry of a blanket or umbrella protective order is not atypical in patent cases. *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 299 F.R.D. 498, 500 (W.D. Va. 2014) ("Courts presiding over patent cases have often crafted protective orders that address the need to limit access to protected technical information."); *see also Norris v. Excel Indus., Inc.*, No. 5:14-CV-00029, 2015 WL 4431022, at *2 (W.D. Va. 20 July 2015) ("An umbrella protective order identifies categories of documents subject to protection and may be utilized when parties to litigation anticipate discovery to be voluminous" and "has 'become a common feature of complex litigation in the federal courts' and is meant to 'expedite production, reduce costs, and avoid the burden on the court of document-by-document adjudication.'" (quoting *Minter v. Wells Fargo Bank, N.A.*, Civil Nos. WMN–07–3442, WMN–08–1642, 2010 WL 5418910, at *3 (D. Md. 23 Dec. 2010))). Technical information exchanged in patent cases is entitled to "'a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information.'" *Norris*, 2015 WL 4431022, at *2 (quoting *Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.*, 682 F. Supp. 20, 22 (D. Del. 1988)).

3

## MOTIONS FOR PROTECTIVE ORDER

The court agrees with the parties that entry of a protective order is appropriate in light of the confidential and proprietary nature of the information subject to discovery. While both parties devote large portions of their briefs to arguments addressing the negotiation process, the court is satisfied that both parties engaged in the conferral process in good faith. It will therefore focus on fashioning appropriate terms for the protective order to be entered.

Valencell urges the court to adopt a protective order (D.E. 43-2) containing the terms of a stipulated protective order approved in another case pending in this court, *Valencell, Inc. v. Fitbit*, 5:16-CV-2-D (*Fitbit* D.E. 36), which in turn largely tracks the terms of a model protective order from the Eastern District of Texas ("Texas model protective order"), E.D. Tex. website, Sample Patent Forms, Protective Order, http://www.txed.uscourts.gov/ page1.shtml?location=info:judge&judge=17) (last visited 12 Dec. 2016). While the *Fitbit* protective order is instructive, Apple is not a party to that case and was not involved in the preparation of that protective order. Apple has provided ample reasons why the *Fitbit* protective order and the Texas model protective order on which it is based are not appropriate to protect all of Apple's interests in this litigation. Accordingly, the court declines to adopt the *Fitbit* protective order or the Texas model protective order here in their entirety, as Valencell advocates.

In support of its proposed order (D.E. 70-1), Apple argues that large portions of it were approved by both parties during the conferral process and should therefore be adopted by the court. Its proposed order is based on a model protective order from the Northern District of California ("California model protective order") (D.E. 70-19). The court does not believe,

4

though, that agreement in the course of the conferral process itself justifies adoption of the terms involved.

The court identifies below the material issues that remain in dispute between the parties and explains its resolution of them. The court is entering herewith a protective order reflecting the resolution of these issues. The court's protective order is based on the protective order proposed by Apple because its terms, as modified by the court, better address the confidentiality concerns presented in this case than the protective order proposed by Valencell. The terminology used in this Order to describe the classes of confidential material, as well as confidential material collectively, is therefore also based on that in Apple's proposed protective order.[3]

### A.    Terms Relating Specifically to Source Code

The parties disagree over the following terms relating specifically to source code: (1) the permissible purpose for printing source code; (2) page limits on printouts of source code; (3) dispute mechanisms regarding the volume of source code printouts; (4) the permissible number of paper copies of source code; (5) the length of notice required to inspect source code printout logs; (6) the software tools necessary to review source code; and (7) use of source code at depositions. The court will review each of these terms below.

### 1.    Purpose for Printing Source Code

Valencell proposes that the protective order limit the printing of source code for the receiving party to that "reasonably necessary to prepare its case" and "relevant to the

---

[3] "Confidential," "attorneys' eyes only," and "source code" as used in this Order with respect to discovery material have the same meanings as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," and "CONFIDENTIAL - ATTORNEYS' EYES ONLY - SOURCE CODE," respectively, as used in Apple's proposed protective order. Apple's Proposed Prot. Ord. ¶ 2(f). "Protected material" refers to all the foregoing material collectively, as in Apple's proposed protective order. *Id.* "Discovery material" as used in this Order also has the same meaning as in Apple's proposed protective order. *Id.* ¶ 2(a).

functionality identified in the infringement or invalidity contentions served pursuant to the scheduling order in this action." Valencell's Proposed Prot. Ord. ¶ 10(i). Apple suggests language similar to that from the California model protective order providing that source code may be printed for the receiving party as "reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for depositions or trial," but not "for the purposes of reviewing the source code." Apple's Proposed Prot. Ord. ¶ 11(c)(v); *see also* Cal. Model Prot. Ord. ¶ 9(d).

The court deems the language proposed by Apple to be more appropriate. While both parties' proposed language is subject to interpretation and may be the subject of later disputes, Apple's language more particularly describes the types of activities warranting printing of source code and thereby provides better guidance to the parties in making their determinations on what portions to print. Apple's proposed language is accordingly included in the court's protective order entered herewith. Ct.'s Prot. Ord. ¶ 11(c)(v).

### 2. Page Limits on Printouts of Source Code

The parties disagree as to whether the protective order should contain limits on the number of pages of source code that may be printed for a receiving party. As noted, Valencell proposes that the protective order limit the printing of source code to that "reasonably necessary to prepare [the receiving party's] case"; Valencell does not propose any limit on the number of pages that may be printed. Valencell's Proposed Prot. Ord. ¶ 10(i). Apple proposes a presumptive limit on source code printing at either 10% of the total source code or five pages of a continuous block of source code, subject to the receiving party demonstrating a need beyond this presumptive limit. *See* Apple's Proposed Prot. Ord. ¶ 11(c)(v). Apple argues that these

limits are appropriate in light of the critical importance to its business of maintaining the confidentiality of its source code.

The court is sympathetic to the concerns raised by Apple as to the highly sensitive nature of its source code. That said, neither the California model protective order submitted by Apple nor the Texas model protective order that Valencell urges the court to consider contain arbitrary page limits similar to those suggested by Apple. Cal. Model Prot. Ord. ¶ 9(d); Tex. Model Prot. Ord. ¶ 10(h).

The court declines to impose the arbitrary, presumptive limits proposed by Apple. Instead, it adopts language similar to that used in the California model protective order, which employs a reasonableness standard and permits a producing party to challenge the amount of source code sought to be printed as excessive or unreasonable, on terms discussed directly below. Ct.'s Prot. Ord. ¶ 11(c)(v); *see FarStone Tech., Inc. v. Apple Inc.*, No. 8:13-CV-01537-ODW, 2014 WL 2865786, at *3 (C.D. Cal. 24 June 2014) (rejecting Apple's arbitrary page limits on source code printing in its proposed protective order and adopting instead language modeled after the California model protective order).

### 3. Dispute Mechanisms regarding the Volume of Source Code Printouts

Under Apple's proposal, within five days of receiving a request by a receiving party for printouts of source code, the producing party must either provide one copy set of the pages requested or inform the requesting party that it objects on grounds that the printed portions are excessive and/or not sought for a permissible reason. Apple's Proposed Prot. Ord. ¶ 11(c)(v). If the parties cannot come to an agreement, either party may seek court resolution of the dispute. *Id.*

Valencell's proposal is the same, except that it places on the producing party the burden of seeking protection from the court if after conferral the parties cannot resolve the objection. Valencell's Proposed Prot. Ord. ¶ 10(i).

The court finds Apple's proposal to be more reasonable and will not place on the producing party alone the burden of seeking intervention to resolve disputes, particularly in the absence of an adequate explanation by Valencell why such a burden allocation is justified. Apple's proposed provision is therefore included in the court's protective order. Ct.'s Prot. Ord. ¶ 11(c)(v).

### 4. Permissible Number of Paper Copies of Source Code

Apple proposes that a receiving party's outside counsel of record may make no more than three additional paper copies of any portions of source code received from the producing party and must maintain a log of all paper copies of such source code. Apple's Proposed Prot. Ord. ¶ 11(c)(ix). The printout log would contain the names of reviewers or recipients of paper copies and the locations where such paper copies are stored. *Id.* Valencell's proposed protective order would allow an outside counsel of record to make no more than five additional paper copies of portions of source code received from the producing party and also requires maintenance of a log of all paper copies. Valencell's Proposed Prot. Ord. ¶ 10(j). Valencell argues that five additional paper copies is appropriate because at certain junctures in the case, it is likely that more than three individuals will require concurrent access to the printouts. The court deems a limit of four additional paper copies to be reasonable. The protective order entered by the court therefore includes this limit. Ct.'s Prot. Ord. ¶ 11(c)(ix).

### 5.     Length of Notice Required to Inspect Source Code Printout Logs

Apple proposes that upon one day's advance notice the receiving party must provide the producing party a copy of the source code printout log. Apple's Proposed Prot. Ord. ¶ 11(c)(ix). Valencell proposes five days' notice. Valencell's Proposed Prot. Ord. ¶ 10(j). The court finds that while a notice period of one day could prove burdensome, a period of five days appears dilatory. A notice period of two days is appropriate. The protective order entered by the court adopts this period. Ct.'s Prot. Ord. ¶ 11(c)(ix).

### 6.     Software Tools

Apple proposes that the producing party install on the computer for source code review tools sufficient for viewing and searching the source code produced if such tools are presently used by that party in the ordinary course of business. Apple's Proposed Prot. Order ¶ 11(c)(i). Apple further agrees that it will provide at least the review tools already discussed by the parties and approved by Apple, but that other tools may be requested by a receiving party's counsel or experts if certain conditions are met, including that the producing party be provided with a CD or DVD containing the licensed software tools at least 14 days in advance of the review date. *Id.*

Valencell proposes that, at the receiving party's request, the computer used for source code review include "reasonable analysis tools" and that the receiving party be responsible for providing the tools or licenses to the tools so that the tools can be installed on the computer. Valencell's Proposed Prot. Ord. ¶ 10(b). Valencell proposes that if the parties cannot agree on a review tool, "the supplying party shall provide the latest version of Notepad++ and Eclipse IDE (along with the appropriate plug-ins for the specific source code)." *Id.*

Valencell has not explained why it finds Apple's proposal objectionable. The court otherwise finds Apple's proposal reasonable. The court's protective order therefore adopts Apple's proposal on this point. Ct.'s Prot. Ord. ¶ 11(c)(i).

### 7. Use of Source Code at Depositions

Valencell proposes that the receiving party be permitted to bring copies of any protected source code to depositions. Valencell's Proposed Prot. Ord. ¶ 10(k). Apple objects that the proposal would allow its source code to be transported through airports, in taxis, and in other public domains without adequate safeguards and thereby expose the source code to the risks of being lost or stolen. Apple proposes, instead, that the receiving party notify the producing party which portions of the source code it wishes to use or request that the producing party bring the source code computer to the deposition, and that the producing party bring printed copies of the specified source code or the source code computer to the deposition. Apple's Proposed Prot. Ord. ¶ 11(c)(xi).

The court finds that Apple's proposal provides the receiving party adequate access to the source code at depositions without presenting the risks to the security of the source code presented by Valencell's proposal. The protective order entered herewith therefore adopts Apple's proposal as to this term. Ct.'s Prot. Ord. ¶ 11(c)(xi).

### B. Which Outside Counsel Permitted Access to Attorneys' Eyes Only and Source Code Material

The parties agree that outside counsel be permitted access to attorneys' eyes only and source code material.[4] But they disagree over which outside counsel should be permitted such access. Valencell proposes that only outside counsel of record be permitted this access.

---

[4] Both parties further agree that staff of outside counsel who are given access are also permitted to have access as reasonably necessary to assist such counsel. Apple's Proposed Prot. Ord. ¶ 2(b)(ii); Valencell's Proposed Prot. Ord. ¶ 5(b).

10

Valencell's Proposed Prot. Ord. ¶¶ 5(a), 9, 10(f). Its argument relates to the prosecution bar that the parties agree should apply, albeit on varying terms, to an attorney who obtains attorneys' eyes only or source code material. Valencell argues that restricting access to such material to attorneys of record is necessary to know which attorneys are subject to the prosecution bar.

Apple proposes that outside counsel of record as well as partners and associates of such counsel "to whom it is reasonably necessary to disclose the information for this litigation" be given access to attorneys' eyes only and source code material. Apple's Proposed Prot. Ord. ¶¶ 2(b), 9(b)(i), 10(c)(i). Apple argues that there is no legitimate reason to exclude from the protection afforded by the prosecution bar, and the other provisions of the protective order, attorneys not of record working at the firm of an outside counsel of record who, despite not being of record, obtain access to attorneys' eyes only or source code material.

In light of the breadth of the prosecution bar attaching to persons who receive attorneys' eyes only or source code material, the court finds it reasonable that a record be maintained of which outside counsel review or receive such material. As discussed, the protective order entered herewith contains provisions requiring maintenance by the receiving party of a log of those who review or receive printouts of source code material. The court's protective order also contains provisions providing for maintenance by the producing party of a log of the persons who are permitted into the room with the computer displaying source code and maintenance by the receiving party of a log of reviewers and/or recipients of electronic copies of source code material. Ct.'s Prot. Ord. ¶ 11(c)(vi), (xii). Valencell's "of record" restriction is therefore not needed to record which outside counsel review and/or receive source code material. As to attorneys' eyes only material, the "of record" restriction is potentially overbroad. It is possible, at least conceptually, that an outside counsel of record would not receive attorneys' eyes only

material. A more precise means of recording which outside counsel not of record receive such material is simply to require that the receiving party maintain a log of this information. At its discretion, the receiving party could omit from the log the outside counsel not of record who have already reviewed and/or received source code material because, by virtue of the recordkeeping otherwise required for the attorneys (and other individuals) who review and/or receive source code material, there is already documentation that they are subject to the prosecution bar. The court adopts in its protective order a requirement for a log relating to attorneys' eyes only material as described. Ct.'s Prot. Ord. ¶ 9(c).

### C.    Notice of Disclosure to Outside Experts or Consultants

The parties agree that before a party discloses protected material to an outside expert or consultant the party must provide notice to the producing party and an opportunity for it to object. Valencell's Proposed Prot. Ord. ¶¶ 5(e), 9, 10(f); Apple's Proposed Prot. Ord. ¶ 12. Apple's proposal, though, requires more extensive disclosure and allows a longer objection period. Under the Apple's proposal, the agreement form the expert or consultant must sign to obtain access is less detailed than under Valencell's proposal, but the difference is not material. In addition, Apple's proposal applies to party representatives who are provided protected material the same disclosure notice requirements it applies to outside experts and consultants.

The court finds Apple's proposal preferable. It better protects the confidentiality of protected material without unduly burdening the disclosure process. The protective order entered herewith therefore adopts Apple's proposal. Ct.'s Prot. Ord. ¶ 12.

### D.    Prosecution Bar

A prosecution bar limits the ability of those who have reviewed certain confidential material to engage in patent preparation or prosecution that uses or benefits from review of the

Case 5:16-cv-00001-D   Document 101   Filed 12/12/16   Page 12 of 21

material for a certain period of time. *In re Deutsche Bank*, 605 F.3d 1373, 1378 (Fed. Cir. 2010) (noting necessity for prosecution bar in patent cases because "there may be circumstances in which even the most rigorous efforts of the recipient of such information to preserve confidentiality in compliance with the provisions of such a protective order may not prevent inadvertent compromise"). In *Deutsche Bank*, the Federal Circuit established a standard for determining the scope of a prosecution bar. The court stated:

> We therefore hold that a party seeking imposition of a patent prosecution bar must show that the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information. We further hold that the party seeking an exemption from a patent prosecution bar must show on a counsel-by-counsel basis: (1) that counsel's representation of the client in matters before the [United States Patent and Trademark Office] does not and is not likely to implicate competitive decision making related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation, and (2) that the potential injury to the moving party from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the opposing party caused by such inadvertent use.

605 F.3d at 1380-81.

Here, the parties agree that a prosecution bar is justified, but disagree about the terms of the bar. Specifically, they disagree on: (1) the technology subject to the prosecution bar; (2) the persons covered by the bar; (3) inclusion of a prohibition against involvement in certain patent acquisitions; (4) inclusion of certain post-grant proceedings; (5) inclusion of an ethical wall between litigation and prosecution counsel; and (6) the duration of the bar. The court will address each term separately.

### 1. Technology Covered

"The subject matter of the prosecution bar should start with the patents-in-suit." *Univ. of Va. Patent Found. v. Gen. Elec. Co.*, No. 3:14CV51, 2015 WL 7431412, at *8 (W.D. Va. 20

13

Nov. 2015), *aff'd*, 2016 WL 379813 (29 Jan. 2016). The bar should address the specific areas of technology put at risk by review of the protected information. *Applied Signal Tech., Inc. v. Emerging Mkts. Commc'ns, Inc.*, No. C-09-02180 SBA DMR, 2011 WL 197811, at *3 (N.D. Cal. 20 Jan. 2011) ("[I]n determining the scope of the proposed prosecution bar, the relevant question is not to which field the accused products are currently limited, but instead in which fields the patented technology reasonably could be used, i.e. the areas of technology where there is risk that individuals may inadvertently exploit their new knowledge in future patent prosecution.").

Valencell proposes that the technology covered by the prosecution bar be "the field of the invention of the patents-in-suit." Valencell's Proposed Prot. Order. ¶ 11. Apple proposes that the technology covered be identified more substantively as "the functionality, operation, and design of technology for monitoring, sensing, collecting, analyzing, or displaying physiological and motion-related information (generally or as described in any Patent-in-suit)." Apple's Proposed Prot. Ord. ¶ 6(b)(i).

The court finds that Valencell's proposed specification of the technology covered is too vague to be effective. *See Front Row Techs., LLC v. NBA Media Ventures, LLC,* 125 F. Supp. 3d 1260, 1291 (D.N.M. 2015) (finding proposal limiting prosecution bar to "the subject matter of the patents-in-suit" to be overly vague). Because Apple's proposed specification reflects consideration of the scope of discovery in this case and accounts more fully for the patent claims in issue, its proposal is adopted in the protective order entered herewith. Ct.'s Prot. Ord. ¶ 6(b)(i); *see Univ. of Va.,* 2015 WL 7431412, at *8 (noting that in cases where the dispute and discovery extends beyond the technology described in the patents in suit, the scope of the prosecution bar must be broader); *see also Buysafe, Inc. v. Google, Inc.*, No. 3:13-cv-781-HEH,

14

2014 WL 2468553, at *3 (E.D. Va. 2 Jun. 2014) (finding good cause for prosecution bar where defendant demonstrated significant risks).

### 2. Persons Covered

Valencell argues that Apple's proposed protective order is unreasonably broad in applying to "anyone" who receives any attorneys' eyes only or source code material and thereby including outside experts Valencell retains who receive such material. Apple's Proposed Prot. Ord. ¶ 6(b). But the proposed protective order of Valencell applies to "[a]ny attorney representing a Party and *any person associated with a Party* and permitted to receive the other Party's" attorneys' eyes only and source code material. Valencell's Proposed Prot. Order ¶ 11 (emphasis added). The term "person associated with a Party" is not defined, but it certainly would appear to be broad enough to encompass a party's outside experts. Notably, the seemingly more narrow term "representatives of each of the Parties," which appears elsewhere in Valencell's proposed protective order (*id.* ¶ 5(d)), was not used. Valencell cannot justly complain about a restriction in Apple's proposed protective order that its own proposed protective order contains. In any event, the court finds application of the prosecution bar to outside experts to be reasonable under the circumstances of this case and adopts the language proposed by Apple, subject to one change. Ct.'s Prot. Ord. ¶ 6(b). Under the court's protective order, the prosecution bar is made applicable to anyone who "reviews and/or receives" eyes' only or source code material, not only those who "receive" it. *Id.*

Valencell also objects that Apple's proposed protective order gives Apple the right to excuse its own experts from the prosecution bar, apparently referring to the introductory phrase to the prosecution bar provision reading, "Absent the written consent of the Producing Party." Apple's Proposed Prot. Ord. ¶ 6(b). As can be seen, though, this language is not limited to

Apple, but applies to the "Producing Party," whether it be Apple or Valencell. Thus, under Apple's proposed protective order, Valencell would be able to waive application of the prosecution bar to its experts. By use of the term "Producing Party," the provision makes clear that any such waiver would apply only as to material produced by the waiving party.

It is far from clear that Valencell's proposed order would not also permit such a waiver. Although there is no explicit waiver provision, a party would presumably retain the ability to waive a provision designed for its protection.

Although not addressed by Apple, a deficiency in the prosecution bar proposed by Valencell is that, as referenced, it applies only to any attorney representing a party and any person associated with a party who is both permitted to receive the other party's attorneys' eyes only or source code material and actually receives it. Valencell's Proposed Prot. Ord. ¶ 11. The proposed bar therefore does not apply to persons who are not permitted to receive such material, but do so anyway, such as through inadvertence. There appears to be no justification for such a loophole that could seriously undermine the effectiveness of the prosecution bar. Apple's proposed protective order contains no such loophole. Again, as modified by the court, it applies to "anyone who reviews and/or receives" attorneys' eyes only or source code material, whether or not such receipt was permitted. Ct.'s Prot. Ord. ¶ 6(b); *see also* Apple's Proposed Prot. Ord. ¶ 6(b). For this and the other reasons stated, the court's protective order includes the prosecution bar proposed by Apple, with modifications. Ct.'s Prot. Ord. ¶ 6(b).

### 3.    Prohibition against Acquisition of Patents with the Technology at Issue

Apple argues that the prosecution bar should prohibit a recipient of attorneys' eyes only or source code material from being involved in the acquisition of patents relating to the technology at issue. Apple's Proposed Prot. Ord. ¶ 6(b)(ii). Apple contends that such a

16

prohibition is necessary to effectuate the purpose of the prosecution bar to help prevent counsel from inadvertently using a party's confidential information learned in litigation to advise a client to acquire patents that may be asserted against the party. *See EPL Holdings, LLC v. Apple Inc.*, No. C-12-04306, 2013 WL 2181584, at *4-5 (N.D. Cal. 20 May 2013). The prosecution bar proposed by Valencell does not include a prohibition against involvement in acquisition of patents on the grounds that no need for such a prohibition has been shown.

The court finds Apple's position persuasive for the reasons it advances. The protective order filed herewith contains a prohibition the same as that proposed by Apple. Ct.'s Prot. Ord. ¶ 6(b)(ii).

### 4. Inclusion of Certain Post-Grant Proceedings

Valencell argues that including in the prosecution bar participation by covered persons in reexamination proceedings would prejudice its ability to protect its intellectual property rights. Its proposed order therefore does not restrict participation by covered persons in post-grant proceedings but, to the contrary, expressly provides without limitation that such persons are not precluded "from participating in an *inter partes* review." Valencell's Proposed Prot. Ord. ¶ 11.

In contrast, Apple proposes that the prosecution bar preclude covered counsel from participating in or advising on drafting or amending claims during post-grant proceedings on behalf of a patentee. Apple's Proposed Prot. Ord. ¶ 6(b). Apple argues that this restriction is necessary because the same risks of inadvertent misuse of information are presented in that context as they are in prosecution. Apple's proposal expressly provides that the bar would not preclude counsel from participating in proceedings during post-grant proceedings that may involve the validity of a patent. *Id.*

17

The court agrees with Apple's position based on the reasoning of the court in *EPL Holdings, LLC*, 2013 WL 2181584, at *4. The *EPL Holdings* court found appropriate a provision that permitted plaintiff's litigation counsel to "participate in third-party initiated review proceedings so long as counsel is prohibited from assisting in any crafting or amendment of patent claims," a holding consistent with the California model protective order. Cal. Model Prot. Order ¶ 8. Other cases also support inclusion of restrictions on post-grant proceedings. *See Voice Domain Techs., LLC v. Apple, Inc.,* No. CIV.A. 13-40138-TSH, 2014 WL 5106413, at *9 (D. Mass. Oct. 8, 2014) ("The Court finds the more recent line of cases recognizing 'that even in a reexamination proceeding, a patent owner can use confidential information to restructure or amend its claims so as to improve its litigation position against alleged infringers'" persuasive in adopting Apple's proposed protective order (quoting unpublished opinion)); *Protegrity Corp. v. Epicor Software Corp.,* No. 3:13 CV 1781 JBA, 2014 WL 3864899, at *4 (D. Conn. 6 Aug. 2014) (agreeing with court in *EPL Holdings* that "patentee counsel should not be banned from reexamination proceedings so long as: (1) the proceedings are not initiated by the patentee; (2) counsel expressly agrees that in the reexamination it will not rely on any confidential information supplied by the opposing party; and (3) litigation counsel may participate in third-party initiated review proceedings so long as counsel is prohibited from assisting in any crafting or amendment of patent claims"). The protective order filed herewith contains language adopting in large part Apple's proposed language relating to restrictions on post-grant proceedings. Ct.'s Prot. Ord. ¶ 6(b).

### 5. Inclusion of an Ethical Wall

The Texas model protective order includes in its prosecution bar provision the requirement that, "to ensure compliance with the purpose of this provision," each party create an

"Ethical Wall" between persons with access to attorneys' eyes only and source code material and any individuals who on behalf of the party are involved in the preparation or prosecution of a patent relating to the field of invention of the patent-in-suit. Tex. Model Prot. Ord. ¶ 11. Although Valencell bases its proposed protective order on the Texas model protective order, it does not include the ethical wall in it. Valencell's Proposed Prot. Ord. ¶ 11. Apple criticizes Valencell for dropping this requirement, but does not include the requirement in its proposed prosecution bar provision. Apple's Proposed Prot. Ord. ¶ 6(b).

Nonetheless, the court shares the perspective reflected in the Texas model protective order that an ethical wall is a reasonable means of helping to ensure compliance with the purpose behind the prosecution bar. The ethical wall requirement remains reasonable notwithstanding the differences between the prosecution bar in the Texas model protective order and the prosecution bar in the court's protective order. The court is therefore including an ethical wall requirement in the protective order entered herewith. Ct.'s Prot. Ord. ¶ 6(b).

### 6. Length of Prosecution Bar

Finally, the parties disagree on the appropriate time period for the prosecution bar to be in place. Valencell proposes one year and Apple proposes two years. Valencell's Proposed Prot. Ord. ¶ 11; Apple's Proposed Prot. Ord. ¶ 6(b). The court finds that a two-year time period is appropriate and adopts it in its protective order. Ct.'s Prot. Ord. ¶6(b); *see Front Row Techs., LLC*, 125 F. Supp. 3d at 1283 ("Courts routinely hold that prosecution bars with two-year durations are reasonable.").

### E. Export Restrictions

The parties disagree over the necessity of including restrictions in the protective order that forbid the exportation of protected material outside of the United States. Valencell, which is

considering the use of an expert located in Canada, contends that export restrictions are unnecessary and that entry of a protective order alone will provide sufficient restriction on disclosure and use of confidential material. It argues that the restrictions on exportation proposed by Apple would unfairly restrict Valencell's ability to employ its preferred experts. Apple initially argued that a wholesale ban on exporting protected material was necessary because exportation of protected material would deprive this court of jurisdiction to enforce its protective order and might violate United States Export Administration Regulations or other federal export controls. Its proposed protective order contains a blanket prohibition against exportation of protected material. Apple's Proposed Prot. Ord. ¶ 6(c).

Valencell, though, identified a protective order agreed to by Apple in another case (*Ericsson, Inc. v. Apple* Prot. Order (D.E. 43-15)) containing a provision permitting exportation to Canada under certain circumstances, which Valencell contends is evidence that Apple's opposition to exportation in this case is merely to frustrate Valencell's prosecution of its claims. *Ericsson* Prot. Ord. ¶10(d)(xiv). In reply, Apple notes that it will agree in the instant case to the restrictions it agreed to in the *Ericsson* case. Apple's Reply 2. The court has reviewed the language from the *Ericsson* protective order and agrees that it contains sufficient restrictions to address Apple's concerns while also allowing Valencell to retain its choice of expert. Accordingly, the language from that protective order, with several clarifying modifications, is included in the protective order entered herewith. Ct.'s Prot. Ord. ¶ 6(c).

## VALENCELL'S EMERGENCY MOTION TO COMPEL AND FOR EXPEDITED BRIEFING

As noted, Valencell filed its motion to compel and for expedited briefing, seeking to compel Apple to produce documents even in the absence of the entry of a protective order by the court. Valencell argues that Local Patent Rule 302.2, E.D.N.C., requires production of

confidential material prior to entry of a protective order. Because the court is filing a protective order contemporaneously with the entry of this order, it need not resolve the question of whether the Local Patent Rules required production at an earlier time. Valencell's motion to compel and for expedited briefing will accordingly be denied as moot.

## CONCLUSION

In sum, for the reasons and on the terms set forth above and in the protective order filed herewith, IT IS ORDERED as follows:

1.  Valencell's motion for a protective order (D.E. 42) is ALLOWED IN PART AND DENIED IN PART;

2  Apple's motion for a protective order (D.E. 69) is ALLOWED IN PART AND DENIED IN PART; and

3.  Valencell's motion to compel and for an expedited briefing (D.E. 66) is DENIED AS MOOT.

SO ORDERED, this 12th day of December 2016.

James E. Gates
United States Magistrate Judge