IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-1-D

| | |
|---|---|
| VALENCELL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| APPLE INC., ) | |
| ) | |
| Defendant. ) | |

On January 4, 2016, Valencell, Inc. ("Valencell") filed a complaint in this court against Apple Inc. ("Apple" or "defendant") alleging patent infringement, breach of contract, and unfair and deceptive trade practices [D.E. 1]. On March 2, 2016, Valencell amended its complaint, removing its claim for breach of contract [D.E. 15]. On March 21, 2016, Apple answered, asserting seven affirmative defenses and eight counterclaims [D.E. 17]. On April 11, 2016, Valencell moved to dismiss Apple's counterclaims [D.E. 19] and filed a memorandum in support [D.E. 20]. On May 5, 2016, Apple amended its answer [D.E. 27]. On May 6, 2016, Apple responded to Valencell's motion to dismiss [D.E. 29]. On May 17, 2016, Apple moved to transfer the case to the Northern District of California [D.E. 30] and filed a memorandum in support [D.E. 31]. On June 24, 2016, Valencell responded to Apple's motion to transfer [D.E. 39]. As explained below, the court denies Apple's motion to transfer and denies Valencell's motion to dismiss as moot.

Valencell is a Delaware corporation with its principal place of business in Raleigh, North Carolina. Am. Compl. [D.E. 15] ¶ 1. Valencell holds patents relating to "wrist-based heart sensor technology." Id. ¶¶ 12, 16, 23, 30, 37. Apple is a California corporation with its principal place of business in California. Id. ¶ 2; Am. Ans. [D.E. 27] ¶ 2.

In 2013, Apple began developing the Apple Watch. Am. Compl. ¶ 5; Am. Ans. ¶ 5. In March 2013, Apple employees accessed Valencell's website and downloaded information. Am. Compl. ¶¶ 6–8; Am. Ans. ¶¶ 6–8. Valencell's website required prospective downloaders to provide identifying information before accessing certain documents, and the Apple employees provided fictitious identifying information. Am. Compl. ¶ 7.

On March 29 and 30, 2013, Valencell and Apple signed a confidentiality agreement that contained a forum-selection clause. [D.E. 31-1] 2–3, 6–8. In June 2013, employees of Apple and Valencell met to discuss using Valencell's technology in Apple products. Am. Compl. ¶ 9; Am. Ans. ¶ 9. Pursuant to the confidentiality agreement, the two companies cooperated through 2013 and into 2014 to investigate implementing Valencell's technology into Apple's products. Am. Compl. ¶¶ 10–12; Am. Ans. ¶¶ 10–12. On November 7, 2013, Valencell and Apple entered into a second confidentiality agreement that superseded the first. [D.E. 31-1] 10–13. That agreement contained a forum-selection clause, restated here in its entirety:

> **ENTIRE AGREEMENT AND GOVERNING LAW.** This Agreement constitutes the entire agreement with respect to the Confidential Information disclosed pursuant to this Agreement and supersedes all prior or contemporaneous oral or written agreements concerning such Confidential Information, including the Apple Discloses NDA dated May 29, 2013. The parties also agree that no information provided by Valencell to Apple prior to the execution of this Agreement is to be considered Valencell Confidential Information, regardless of how such information may have been marked. The parties further agree that notwithstanding any click-through, embedded, web-based, or other licenses displayed or associated with the distribution and use of the "PerformTek" app made available to Apple by [Valencell] through the TestFlight beta test platform, the use of the "PerformTek" app by Apple shall be solely governed by the terms of this Agreement. This Agreement may not be amended except by written agreement signed by authorized representatives of both parties. This Agreement will be governed by and construed in accordance with the laws of the State of California, excluding that body of California law concerning conflicts of law. The parties further submit to and waive any objections to the exclusive jurisdiction of and venue in any of the following forums: U.S. District Court for the Northern District of California, California Superior Court for Santa Clara County, or any other forum in Santa Clara County, for any litigation arising out

2

of this Agreement.

Id. 12–13.

On Aril 24, 2015, Apple began selling the Apple Watch, which incorporated a heart-rate sensor. Am. Compl. ¶ 13; Am. Ans. ¶ 13.

Apple asks this court to transfer the action to the United States District Court for the Northern District of California. Courts will generally honor the parties' "contract [to] confer jurisdiction and venue on a particular court . . . so long as it is not unreasonable." Albemarle Corp. v. AstraZeneca UK Ltd., 628 F.3d 643, 649–50 (4th Cir. 2010). Federal courts follow the federal law of contract interpretation to determine the scope of a forum-selection clause. Id. at 650 (collecting cases). In doing so, a federal court must first determine if a particular forum-selection clause applies to a plaintiff's claims. See Robinson v. Ladd Furniture, Inc., 995 F.2d 1064, at *4 (4th Cir. 1993) (per curiam) (unpublished table decision).

The forum-selection clause in this case covers "any litigation arising out of" the non-disclosure agreement. [D.E. 31-1] 12–13. For guidance, the court looks to cases interpreting arbitration clauses which are "in effect, a specialized kind of forum-selection clause." Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 (1974). However, courts freely construe arbitration agreements in favor of arbitration, see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983), but have no corresponding preference in favor of transfer pursuant to forum-selection clauses. Courts distinguish between arbitration clauses which use the phrase "arising out of" or the similar phrase "arising under" and those that include broader language like "related to" or "in connection with." See Great Am. Ins. Co. v. Hinkle Contracting Corp., 497 F. App'x 348, 354 (4th Cir. 2012) (unpublished); Burlington Ins. Co. v. Trygg-Hansa Ins. Co. AB, 9 F. App'x 196, 201 n.6 (4th Cir. 2001) (per curiam) (unpublished); Am. Recovery Corp. v. Computerized Thermal

3

Imaging, Inc., 96 F.3d 88, 92–93 (4th Cir. 1996). Other courts have held that a cause of action falls within the scope of an "arising under" or "arising out of" clause only if the cause of action relates to the interpretation, performance, or non-performance of the underlying contract. See Cape Flattery Ltd. v. Titan Mar., LLC, 647 F.3d 914, 921–22 (9th Cir. 2011); Phillips v. Audio Active, Ltd., 494 F.3d 378, 389–90 (2d. Cir. 2007); Omron Healthcare, Inc. v. Maclaren Exps. Ltd., 28 F.3d 600, 602 (7th Cir. 1994); Mediterranean Enters. v. Ssangyong Corp., 708 F.2d 1458, 1463–64 (9th Cir. 1983); see also Harley v. Bank of N.Y. Mellon, No. 1:15-CV-1384, 2015 WL 6956564, at *3 (M.D. Pa. Nov. 10, 2015) (unpublished). By contrast, if an arbitration clause uses broader language, such as "arising out of or related to" or "arising out of or connected with," then that clause covers any claim that has a "significant relationship" with the contract. See Am. Recovery Corp., 96 F.3d at 93; see also Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 398 (1967).

The forum-selection clause at issue applies to "litigation arising out of this Agreement." [D.E. 31-1] 13. Valencell's claims of patent infringement and unfair and deceptive trade practices do not arise out of the contract. Therefore, the claims are not subject to the forum-selection clause.

The court now addresses whether it should nonetheless transfer the action to the Northern District of California. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). In analyzing a motion to transfer, the court initially determines whether the action could have been brought in the proposed transferee district. See, e.g., Szulik v. TAG V.I., Inc., 858 F. Supp. 2d 532, 547 (E.D.N.C. 2012) (collecting cases). If so, the court must then decide whether to transfer venue. Id.

To determine whether an action could have been brought in the transferee forum, a court must find that personal jurisdiction and venue would have been proper in the proposed transferee

4

district had the plaintiffs filed suit there. See, e.g., Hoffman v. Blaski, 363 U.S. 335, 340–44 (1960). Personal jurisdiction over Apple would have been proper in the Northern District of California based on the presence of Apple's corporate headquarters in that district. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 923–24 (2011). Venue also would have been proper in the Northern District of California because a substantial part of the events and omissions giving rise to Valencell's claims occurred in that district. See Am. Compl. ¶¶ 2, 5–14; 28 U.S.C. §§ 1391(b)(2), 1400(b). Therefore, personal jurisdiction and venue would have been proper in the Northern District of California had Valencell originally filed there.

Next, the court must decide whether to transfer the case. See Szulik, 858 F. Supp. 2d at 548; Dacar v. Saybolt LP, No. 7:10-CV-12-F, 2011 WL 223877, at *2 (E.D.N.C. Jan. 24, 2011) (unpublished); Blue Mako, Inc. v. Minidis, 472 F. Supp. 2d 690, 703 (M.D.N.C. 2007). A district court must "consider four factors when deciding whether to transfer venue: (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc., 791 F.3d 436, 444 (4th Cir. 2015).[1] In balancing these factors, a district court has substantial discretion to decide whether to transfer venue. See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Brock v. Entre Comput. Ctrs., Inc., 933 F.2d 1253, 1257 (4th Cir. 1991); Jenkins v. Albuquerque Lonestar Freightliner, LLC, 464 F. Supp. 2d 491, 493 (E.D.N.C. 2006). The court now considers each factor in turn.

As for the first factor, the weight accorded to plaintiff's initial choice of forum, Valencell

---

[1] Courts in this district have described the test in terms of eleven more-specific factors rather than four more-general factors, but the analysis remains essentially the same. See Szulik, 858 F. Supp. 2d at 548; Dacar, 2011 WL 223877, at *3; Charles v. Bradley, No. 5:08-CV-124-F, 2009 WL 1076771, at *2 (E.D.N.C. Apr. 21, 2009) (unpublished).

5

initially filed this action in the Eastern District of North Carolina. Thus, the first factor weighs against transfer.

The second factor concerns accessibility of evidence and witnesses. Although many important potential witnesses—particularly Apple employees—may reside in the Northern District of California, others reside in the Eastern District of North Carolina. Therefore, even if this factor were to weigh in favor of transfer, it would not weigh strongly.

The third factor concerns the convenience of the parties. Valencell's principal place of business is in the Eastern District of North Carolina. Am. Compl. ¶ 1. Apple's principal place of business is in the Northern District of California, but Apple also regularly conducts business in the Eastern District of North Carolina. Id. ¶¶ 2, 4. Therefore, this factor does not weigh in favor of transfer.

The fourth factor requires the court to consider the interests of justice. The interests of justice implicate the relative congestion of the transferee and transferor courts and the particular interest a forum may have in deciding a case. The Eastern District of North Carolina and the Northern District of California have similar caseloads. Compare United States Courts, Federal Court Management Statistics, http://www.uscourts.gov/statistics-reports/federal-court-management-statistics-june-2016, at 21, with id. at 66. Therefore, the relative congestion of the two forum courts does not weigh in favor of transfer. Valencell's claims arise under federal patent law and North Carolina's unfair and deceptive trade practices statute. Am. Compl. ¶¶ 15–44. The Northern District of California has no greater interest in deciding questions of federal patent law or North Carolina state law than the Eastern District of North Carolina. Therefore, the particular interest a forum may have in deciding a case does not weigh in favor of transfer.

Viewed as a whole, the only factor possibly weighing in favor of transfer is the convenience

6

of certain witnesses. But that factor does not weigh strongly in favor of transfer and does not overcome the "substantial weight" afforded to a plaintiff's choice of forum. See, e.g., Trustees of the Plumbers and Pipefitters Nat'l Pension Fund, 791 F.3d at 444. Accordingly, the court denies defendant's motion to transfer the action to the Northern District of California.

As for Valencell's motion to dismiss the counterclaims in Apple's first answer [D.E. 19], Apple has amended its answer [D.E. 17, 27]. Therefore, the court denies Valencell's motion to dismiss the counterclaims in Apple's first answer as moot.

In sum, Apple's motion to transfer the action to the United States District Court for the Northern District of California [D.E. 30] is DENIED. Valencell's motion to dismiss Apple's counterclaims [D.E. 19] is DENIED as moot. Apple's motion for an in-person case management conference [D.E. 126] is GRANTED. The court will hold the conference on February 28, 2017, at 1:00 p.m. in courtroom one of the Terry Sanford Federal Building and United States Courthouse, 310 New Bern Avenue, Raleigh, North Carolina. The parties are directed to submit proposed revisions to the schedule no later than February 21, 2017.

SO ORDERED. This _6_ day of February 2017.

JAMES C. DEVER III
Chief United States District Judge